IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRA JOHNSON, Plaintiff | : | Civil Action No. 4:04-cv-1804 |
| v. | : | (Judge Jones) |
| JOHN A. PALOCKOVICH, Superintendent, GEORGE WEAVER, LT. JOHN DOE RUSKUS, JOHN DOE GROVE, Officer, SHARON M. BURKS, RANDY H. CASNER, JASON L. DELINE, HARRY E. ERSEK, III, DOROTHY GRIFFITH, CARL F. GROVE, Jr., WAYNE D. HEVERLY, Jr., BRIAN J. KOVAC, THOMAS RANDY LANTZ, Dr. RONALD LONG, JOSEPH R. SEIDEL, and STEVEN L. WHITESEL, Defendants | : | (Magistrate Judge Mannion) |

**MEMORANDUM**

**February 5, 2007**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On August 16, 2004, Plaintiff, Ira Johnson ("Plaintiff"), an inmate at the State Correctional Institution at Smithfield ("SCI-Smithfield") filed this action pursuant to 42 U.S.C. § 1983. (Rec. Doc. 1). The matter was referred to

Magistrate Judge Mannion.

On November 20, 2006, Magistrate Judge Mannion issued a Report and Recommendation (doc. 161) recommending that the motion to dismiss of Defendants Palockovich, Weaver, Riskus, Grove, Burks, Canser, Deline, Ersek, Griffith, Heverly, Kovac, Lantz, Seidel and Whitesel (doc. 144) be granted and that the motion to dismiss of Defendant Long (doc. 146) also be granted. Pursuant to those recommendations, Magistrate Judge Mannion further recommended that the motion for a briefing schedule (doc. 140) and motion to stay discovery (doc. 149) be dismissed as moot.

On January 5, 2007, the Plaintiff filed objections to the Magistrate Judge's report. (Rec. Doc. 166). The Defendants filed responses to the Plaintiff's objections on January 17, 2007 (doc. 168) and January 19, 2007. (Rec. Doc. 169). This matter is now ripe for disposition.

**FACTUAL BACKGROUND**:

On January 3, 2004, Defendant Lantz, a captain at SCI-Smithfield sought the approval of Defendant Long, the medical director of the institution, to use Oleoresin Capsicum (commonly referred to as "pepper spray") to extract an inmate in the Plaintiff's housing unit. Upon Defendant Long's approval, Defendant Lantz then ordered Defendant Riskus, a lieutenant at SCI-Smithfield, to assemble an

extraction team. The team consisted of Defendants Grove, Whitesel, Heverly, Casner, Deline, Seidel, Kovac and Ersek, all of whom are corrections officers at SCI-Smithfield. Defendant Riskus ordered Defendant Ersek to dispense the pepper spray.

The pepper spray was administered in a cell to extract a particular unruly inmate. To be sure, the entire housing unit was not subject to a general "gassing" of pepper spray. Plaintiff, however, did suffer some secondary exposure to the peppers pray and suffered a resulting asthma attack. An officer eventually removed Plaintiff from the unit and took him outside where Plaintiff vomited and had severe difficulty breathing. Plaintiff used his Albuterol asthma inhaler and felt relief. However, after about five minutes, Plaintiff began to suffer another asthma attack and was sent to the medical unit where he was told that the pepper spray had triggered his chronic pulmonary condition. He was told to cease using his asthma inhaler for the rest of the night and return to his cell and lay down.

During the night, Plaintiff experienced another asthma attack and chest pain. Eventually an officer sent him to the medical unit where Defendant Griffith, a nurse, examined him. The Plaintiff described his problem to her. She told him he was still affected by the pepper spray but would be fine the next day with rest. She sent him back to his cell to lay down without any other treatment.

During the evening of January 4, Plaintiff again experienced chest pain and difficulty breathing, as well as numbness in his extremities. The Plaintiff's cellmate called for help. An officer called for medical assistance, and Plaintiff was sent to an outside hospital. The treating physician diagnosed the Plaintiff as having inflamed chest muscle tissue and prescribed appropriate medication. Since the exposure to the pepper spray, the Plaintiff has suffered from anxiety and panic attacks, for which he has been prescribed medications.

On January 8, 2004, the Plaintiff filed a grievance concerning the events of January 3 and 4, 2004. On January 14, 2004, Defendant Weaver, the chronic healthcare administrator at SCI-Smithfield, denied the grievance as meritless. On January 28, 2004, Defendant Palockovich, SCI-Smithfield's superintendent, denied the Plaintiff's intermediate appeal. On April 10, 2004, Defendant Burks, the Pennsylvania Department of Corrections' chief grievance and appeals secretary, denied the Plaintiff's final appeal.

Plaintiff filed the instant action based on the foregoing events, raising three counts against all Defendants, on the grounds that their use of pepper spray and improper medical treatment violated his rights under the Eighth Amendment to the United States Constitution. First, the Plaintiff alleges that the Defendants were negligent in discharging the pepper spray and improperly responding to his

subsequent medical condition. Second, he alleges that the Defendants were deliberately indifferent. Finally, he alleges that the Defendants intentionally inflicted emotional distress upon him.

In the complaint, Plaintiff specifies the basis of each Defendant's purported liability:

Defendants Palockovich, Weaver, and Burks are allegedly liable for denying Plaintiff's grievance.

Defendant Long is allegedly liable for authorizing the use of pepper spray.

Defendants Lantz and Riskus are allegedly liable for ordering the use of pepper spray without first removing the Plaintiff.

Defendants Grove, Whitesel, Heverly, Casner, Deline, Seidel, and Kovac are allegedly liable because, as members of the extraction team, they "stood by and did nothing to prevent the Plaintiff's Eighth Amendment violations."

Defendant Eresk is allegedly liable for dispensing the pepper spray.

Finally, Defendant Griffith is allegedly liable for failing to properly treat the Plaintiff's injuries.

The Plaintiff seeks compensatory damages "for pain and suffering and psychological distress," punitive damages and costs. In response, the Defendants argue that Plaintiff has failed to state a claim under §1983 and the Eighth

Amendment.

**STANDARDS OF REVIEW**:

Review of Magistrate Judge's Report

When objections are filed to a report of a magistrate judge, we make a *de novo* determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections. See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. §636(b)(1); Local Rule 72.31. Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge. See id. Indeed, in providing for a *de novo* review determination rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

Motion to Dismiss Standard

In considering a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for

the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d7 310 (3d Cir. 1986).

## DISCUSSION

Stating a Claim under 42 U.S.C. § 1983

Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the United States Constitution or federal law. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). It is well established that to state a claim under §1983, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. See 42 U.S.C. §1983; American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Kaucher, 455 F.3d at 423.

Liability under §1983 is personal in nature, and a defendant is liable only if

he was personally, affirmatively involved in the alleged malfeasance. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S. Ct. 2405 (2006)(citing Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)). A defendant who supervised a malfeasor but did not actually inflict the malfeasance is not liable under §1983 on a theory of *respondeat superior* unless he personally directed or had actual knowledge of and acquiesced in the deprivation because such nonfeasance is equivalent to personal, affirmative involvement. See Polk County v. Dodson, 454 U.S. 312, 325 (1981)(citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)); Robinson, 120 F.3d at 1294. Accordingly, a defendant who lacked any supervisory power over the malfeasor and who was not personally, affirmatively involved in the malfeasance is not liable under §1983. Robinson, 120 F.3d at 1294.

To state a claim under §1983 for denial of medical care in violation of the Eighth Amendment, the plaintiff must prove specific facts which show that the defendants exhibited a deliberate indifference to his or her medical needs. See Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa. 1996). "Deliberate indifference is more than inadvertence or a good faith error; it is characterized by

'obduracy and wantonness,'" Id. (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). "Negligent misdiagnosis or an inadvertent failure to provide care does not establish a constitutional violation." Id. (citing Estelle v. Gamble, 429 U.S. 97, 104-106 (1976).

Generally, a prison official violates the Eighth Amendment's prohibition on cruel and unusual punishment, which is implicated "only [by] the unnecessary and wanton infliction of pain," when he is deliberately indifferent "to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 834 (1994)(quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). Deliberate indifference is the *mens rea* element of an Eight Amendment claim; the plaintiff must show that the defendant had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 298).

To be liable for deliberate indifference under the Eighth Amendment, the plaintiff must show that the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Id. at 837. The prison official must have actual knowledge; a risk that he "should have perceived but did not" does not give rise to liability. Id.

The courts grant "considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" Id. (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Evidence which only shows that the inmate disagreed with the treatment administered by prison medical staff is not sufficient to mete out a constitutional claim. Id. at 816 (citing Estelle, 429 U.S. at 105-06). "The key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires." Id. (citation omitted).

Furthermore, there are limitations in §1983 improper medical treatment claims against non-medical personnel. Non-medical personnel are generally not liable under §1983 for medical mis- or non-treatment once a prisoner is under the care of medical personnel. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). However, they may be held liable if they had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Id.

We shall now apply, *de novo*, the above-referenced standard for stating a claim pursuant to §1983 to each of the named Defendants.

Defendants Palockovich, Weaver and Burks

As referenced in the factual portion of this Memorandum, Defendants Palockovich, Weaver and Burks each denied the Plaintiff's grievance at the various levels of the grievance process. As Magistrate Judge Mannion correctly submits in his Report, the facts as alleged by the Plaintiff show that Defendants Palockovich, Weaver and Burks encountered the incident that is the subject of this lawsuit *only* through Plaintiff's grievance process. Therefore, at best, these Defendants had mere *post hoc* knowledge of the alleged malfeasance. The fact that these Defendants made findings adverse to Plaintiff regarding his grievance does not catapult them into any form of acquiescence to alleged malfeasance, and the facts make it clear that these Defendants had no personal involvement with the incident. Accordingly, it is plain to the Court that the Plaintiff has failed to state a claim upon which relief can be granted as to Defendants Palockovich, Weaver and Burks.

The objections of the Plaintiff regarding Defendants Palockovich, Weaver and Burks are overruled. We shall adopt the portion of the Magistrate Judge's report that recommends the action be dismissed as to these Defendants.

The Extraction Team Defendants: Grove, Whitesel, Heverly, Casner, Deline, Seidel, and Kovac

The Plaintiff alleges that the nonfeasance of these Defendants while Plaintiff was in distress due to the pepper spray creates a claim against them pursuant to §1983. However, unless these seven Defendants had supervisory authority to control the use of the pepper spray, they cannot be responsible for its use because they had no power to intervene. Plaintiff does not allege that any of these seven Defendants had any power of the dispensation of the pepper spray. In fact, and as Magistrate Judge Mannion notes, Plaintiff delineates a clear chain of authority that indicates these Defendants had *no* supervisory control: Defendant Long gave approval to Defendant Lantz, who in turn authorized Defendant Riskus, who in turn authorized Defendant Ersek to dispense the pepper spray.

Accordingly, because Defendants Grove, Whitesel, Hevelry, Casner, Deline, Seidel and Kovac were not personally involved in the dispensation of the pepper spray, Plaintiff has not established a *prima facie* case pursuant to §1983 against them. Therefore the Plaintiff's objections regarding these Defendants are overruled and we shall adopt the portion of the Magistrate Judge's report that recommends the action be dismissed as against them.

<u>Defendants Long, Lantz, Riskus and Ersek</u>

Defendants Long, Lantz, and Riskus were all links in the chain of command that ultimately authorized Defendant Ersek to dispense the pepper spray in the

Plaintiff's housing unit. As discussed in detail above, to establish a *prima facie* case of deliberate indifference, the Plaintiff must demonstrate that the Defendants had actual knowledge that their conduct involved a risk to Plaintiff and that they subjectively disregarded that risk in maintaining their course of conduct.

Magistrate Judge Mannion notes that the Plaintiff does not aver in his pleadings that any of the Defendants knew he had asthma. In his objections, Plaintiff seeks to amend his amended complaint to aver that the Defendants were possessed with the knowledge that he was an asthmatic. However, for the reasons that follow we find that even assuming *arguendo* that these Defendants knew of the Plaintiff's asthmatic condition, they still did not act with deliberate indifference. Therefore, it is entirely unnecessary for us to grant Plaintiff leave to again amend his complaint in this regard.

Defendants Long, Lantz and Riskus authorized the use of pepper spray on a single unruly inmate to effectuate his extraction from his cell. Defendant Ersek dispensed the pepper spray upon that inmate when duly authorized. There is plainly nothing in the factual record indicating that these Defendants were subjectively aware that the direct and isolated use of pepper spray upon the unruly inmate would cause a substantial risk that the Plaintiff would suffer an asthma attack, even if they were aware that the Plaintiff suffered from asthma. As

aforementioned, the pepper spray was not wantonly dispersed throughout the cell block, but administered to a single, particular inmate, contained within his cell. We cannot find that the Defendants knew, even if they were aware that Plaintiff was an asthmatic, that Plaintiff would suffer an asthma attack resulting from secondary inhalation of the pepper spray that was administered to a single inmate.

We find that the Plaintiff has failed to state a *prima facie* §1983 claim against Defendants Long, Lantz, Riskus and Ersek. Therefore, the Plaintiff's objections in this regard are overruled and we shall adopt the portion of the Magistrate Judge's report that recommends dismissal of the action as against these Defendants.

Defendant Griffith

It is not disputed that Defendant Griffith had no personal involvement with the dispensation of the pepper spray in Plaintiff's housing unit, therefore, the only possible claim against her would be a §1983 claim for medical mis- or non-treatment.

When Defendant Griffith examined Plaintiff, she told him that he was experiencing difficulties because of the pepper spray, but that he should lay down and he would feel better with rest. Defendant Griffith's directions to Plaintiff do not indicate that she refused or denied him treatment, but rather that she assessed

his distress and gave him instructions she thought medically appropriate. That the Plaintiff disagreed with her assessment of his condition is of no moment. At worst, Defendant Griffith made a good faith misdiagnosis of Plaintiff's condition, however there is no showing that she acted with deliberate indifference.

Accordingly, we shall overrule the Plaintiff's objections as they relate to Defendant Griffith and adopt the portion of the Magistrate Judge's report wherein he recommends dismissal of the Plaintiff's claims against Defendant Griffith.

**CONCLUSION**:

Based upon our *de novo* review of the matter, we find that the Plaintiff has failed to state a claim upon which relief can be granted, and accordingly we shall adopt the Magistrate Judge's report in its entirety and overrule the Plaintiff's objections. An appropriate Order shall issue.

John E. Jones III
United States District Judge